```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BRHYIN WILLIAMS,
                                                                    For Online Publication Only

                    Plaintiff,
                                                                    **MEMORANDUM & ORDER**
            -against-                                               17-CV-1660 (JMA)

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                    Defendant.
----------------------------------------------------------------X
```

**APPEARANCES**

Charles E. Binder, Esq.
Law Office of Charles E. Binder and
Harry J. Binder, LLP
485 Madison Avenue, Suite 501
New York, NY 10022
*Attorney for Plaintiff*

Dara A. Olds, Esq.
United States Attorney's Office, EDNY
271 Cadman Plaza East
Brooklyn, NY 11201
*Attorney for Defendant*

**AZRACK, United States District Judge:**

Plaintiff Brhyn Williams ("Plaintiff") seeks review of the final determination by the Commissioner of Social Security (the "Commissioner"), reached after a hearing before an administrative law judge ("ALJ"), finding that Plaintiff was not eligible for disability insurance benefits ("DIB") or for supplemental security income benefits ("SSI") under the Social Security Act (the "Act"). The case is before the Court on the parties' cross-motions for judgment on the pleadings. For the reasons discussed herein, Plaintiff's motion for judgment on the pleadings is GRANTED in part and DENIED in part, the Commissioner's cross-motion is DENIED, and the case is REMANDED for proceedings consistent with this opinion.

# I. BACKGROUND

## A. <u>Procedural History</u>

In September 2015, Plaintiff filed applications for DIB and SSI with the Social Security Administration ("SSA"), alleging disability as of February 1, 2015, due to neurological problems, hand swelling, arthritis, pain, difficulty walking, and high blood pressure. (<u>See</u> Tr. 95–108.[1]) Following denial of his claim, Plaintiff requested, and appeared with his attorney for, an administrative hearing before ALJ Patrick Kilgannon ("ALJ Kilgannon") on April 15, 2016. (Tr. 42–69.) A second administrative hearing took place on September 1, 2016, during which a non-examining consultative physician testified regarding his medical opinion of Plaintiff's functional ability based on Plaintiff's medical records. (Tr. 70–94.)

In a decision dated October 3, 2016, ALJ Kilgannon denied Plaintiff's claim, finding that he was not disabled for purposes of receiving DIB or SSI under the Act. (Tr. 14–27.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (Tr. 1–6.) This appeal followed. (ECF No. 1.)

## B. <u>Factual Background</u>

In light of the Court's decision to remand this case for further proceedings, the Court recounts only the evidence relevant to that determination.

Plaintiff was born in 1980 and completed one year of college. (Tr. 207, 238.) He was in the military from 1998 to 2002; did marketing and made deliveries for a liquor business from 2003 to 2005; and worked as a senior counselor at a children's organization from 2008 to 2015. (Tr. 238.) He first reported pain all over his body in February 2015. (Tr. 252–53.) He testified at the administrative hearing that the pain affected his ability to work, indicated it affected his hands,

---

[1] Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner. (ECF No. 17.)

wrists, knees, back, feet, and legs, and reported that the pain ranged from a five to a ten on a scale of zero to ten. (Tr. 52–55.) Overall, Plaintiff testified that he had great difficulty performing tasks and the pain interfered with many aspects of his life. (Tr. 54–59.) He also testified that he further injured his knees, back, neck, and shoulders in a car accident in December 2015. (Tr. 53.)

Plaintiff went to North Shore LIJ Medical Group ("North Shore") on February 3, 2015, with general complaints that he felt poorly. (Tr. 491–93.) He saw various practitioners at North Shore over the next year or so, primarily Dr. Lawrence Carter and Nurse Practitioner Christine Stamatos ("N.P. Stamatos"). (Tr. 349–98, 455–617.) Both Dr. Carter and N.P. Stamatos saw Plaintiff numerous times for his ailments, including complaints of pain, issues with his hands, joint stiffness, problems sitting for long periods of time, fatigue, and a rash on his chest and forearm. (Id.) In October 2015, Plaintiff was sent for a biopsy which revealed possible dermatomyositis.[2] (Tr. 495–96.) Dr. Carter and N.P. Stamatos noted this result at various follow-up appointments, and a dermatologist at North Shore reported that he had dermatomyositis in September 2016.[3] (Tr. 461–64, 554–75, 775.) Plaintiff was prescribed various medications throughout his time treating with Dr. Carter and N.P. Stamatos as they worked to understand what was causing his pain.

Other than treatment with practitioners at North Shore, Plaintiff saw a chiropractor multiple times a week between December 2015 and March 2016 following the December 2015 car accident. (Tr. 432–54.) He was also treated by an orthopedic surgeon several times, and had MRIs taken of his knees and back between January and February 2016. (Tr. 410–17.) Ultimately, Plaintiff underwent arthroscopic surgery on both knees in May and June 2016. (Tr. 756–57, 760–61.) He

---

[2] "Dermatomyositis is an uncommon inflammatory disease marked by muscle weakness and a distinctive skin rash." https://www.mayoclinic.org/diseases-conditions/dermatomyositis/symptoms-causes/syc-20353188.

[3] It appears Plaintiff also underwent a muscle biopsy in August 2016, in addition to his October 2015 skin biopsy, which N.P. Stamatos indicated confirmed he had a muscle disease. (Tr. 776.) He also underwent two electrodiagnostic studies that were generally normal. (Tr. 419–27, 765–68)

3

also saw a neurologist regarding his continued pain in April 2016 and the doctor's general impression was that Plaintiff had "diffuse chronic musculoskeletal pain with rash." (Tr. 771–74.)

**C.  The Commissioner's Decision**

ALJ Kilgannon applied the five-step process required by the SSA's regulations, described below, and denied Plaintiff's application for benefits. (Tr. 14–27.) ALJ Kilgannon first indicated that Plaintiff meets the insured status requirements and has not engaged in substantial gainful activity since his alleged onset date. (Tr. 16.) Next, at step two, he found that Plaintiff had the following severe impairments: dermatomyositis, sleep apnea, internal derangement of the knees, and internal derangement of the neck/back. (Tr. 16–17.) At step three, ALJ Kilgannon determined that Plaintiff's impairments, alone or in combination do not meet or medically equal the severity of any listed impairments. (Tr. 17.)

ALJ Kilgannon then addressed step four, first determining Plaintiff's residual functional capacity ("RFC"). He briefly considered Plaintiff's subjective complaints and recited boilerplate language to discount these complaints. (Tr. 18.) The ALJ then provided a lengthy summary of Plaintiff's medical records. (Tr. 18–25.) However, he only included one brief paragraph identifying the weight assigned to the opinions of the various medical personnel in the record. (Tr. 25–26.) Ultimately, ALJ Kilgannon concluded that Plaintiff had an RFC to perform the full range of light work, with certain additional limitations. (Tr. 17.) Based on this RFC determination and the testimony of a vocational expert at the hearing, ALJ Kilgannon concluded at step four that Plaintiff could perform his past relevant work as a childcare program supervisor and sales/marketing representative. (Tr. 26.) Accordingly, ALJ Kilgannon found that Plaintiff was not under a disability as defined in the Act from February 1, 2015 through the date of his decision. (Tr. 26.)

## II. DISCUSSION

### A. <u>Social Security Disability Standard</u>

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. §§ 404.1520, 416.920. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). As part of the fourth step, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his or her prior type of work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009); see also Campbell v. Astrue, No. 12-CV-5051, 2015 WL 1650942, at *7 (E.D.N.Y. Apr. 13, 2015) (citing Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999).

B. <u>Scope of Review</u>

In reviewing a denial of disability benefits by the SSA, it is not the function of the district court to review the record *de novo*, but instead to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard.'" Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a remand for further proceedings is warranted in cases where the Commissioner has failed to provide a full and fair hearing, to make sufficient findings, or to have correctly applied the law and regulations. See Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999); see also 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

## C. Analysis

Plaintiff argues that ALJ Kilgannon failed to properly weigh the medical opinion evidence in violation of the "treating physician rule," and did not properly evaluate Plaintiff's credibility. The Court agrees and remands for further proceedings to allow the Commissioner to conduct a revised RFC analysis, consistent with this opinion.

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (stating that an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)).

"The Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)). Accordingly, the RFC assessment is based on a review of the entire record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An RFC determination must be affirmed on appeal when it is supported by substantial evidence in the record. Barry, 606 F. App'x. at 622 n.1.

Here, the assessment of the medical opinion evidence was governed by the "treating physician rule" in effect when Plaintiff filed his application. If a treating physician's opinion regarding the nature and severity of an individual's impairments is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence" in the record, the ALJ will credit that opinion with "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). However, an ALJ may discount a treating physician's opinion when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record, or the evidence otherwise supports a contrary finding. See 20 C.F.R. §§ 404.1527(c), 416.927(c). An ALJ must provide "good reasons" not to grant controlling weight to a treating physician's opinion. See Schaal v. Apfel, 134 F.3d 496, 503–04 (2d Cir. 1998). And, when a treating physician's opinion is not given controlling weight, the ALJ should "comprehensively set forth reasons for the weight assigned" to that opinion, and consider the factors identified in the SSA regulations. Halloran, 362, F3d at 33; see also 20 C.F.R. §§ 404.1527(c), 416.927(c). The same factors are considered when evaluating the weight to give other medical opinion evidence. 20 C.F.R. §§ 404.1527(c), 416.927(c).

There are four medical opinions in the record from: Dr. Lawrence Carter, Plaintiff's treating physician (Tr. 399–403); Christine Stamatos, a nurse practitioner with North Shore's Division of Rheumatology who also treated Plaintiff (Tr. 405–09); Dr. Joyce Graber, a consulting physician who examined Plaintiff once and did not review his medical records, but reviewed an x-ray of Plaintiff's back and left knee (Tr. 313–18); and Dr. Gerald Galst, who did not examine Plaintiff, but reviewed his medical records and testified at the second administrative hearing (Tr. 631–33; 640–47.).[4]

ALJ Kilgannon placed "little weight" on the opinions of Plaintiff's two treating sources, Dr. Carter and N.P. Stamatos, because he said the opinions "were not supported by the medical

---

[4] There are also documents from Dr. Carter and N.P. Stamatos in which they directly opine that Plaintiff is disabled. (Tr. 311–12, 404.) The determination as to whether Plaintiff is disabled is reserved to the Commissioner, so ALJ Kilganonn properly gave them no weight. 20 C.F.R. §§ 404.1527(d)(1), 416.927(2)(1)

8

evidence, and were completely inconsistent with the claimant's activities of daily living." (Tr. 25–26.) He gave some weight, but not great weight to the opinion of the consultative examiner, Dr. Graber because her "opinion was somewhat consistent with the record, but she examined the claimant only once." (Tr. 26.) Finally, he gave great weight to the opinion of the non-examining medical expert, Dr. Galst, because he said the opinion "was well supported by the record." (Id.)

As Dr. Carter is a "treating physician," ALJ Kilgannon was required to provide "good reasons" not to grant controlling weight to his opinion.[5] However, ALJ Kilgannon merely offered a conclusory statement that Dr. Carter's opinion was not supported by the medical evidence and was inconsistent with Plaintiff's activities of daily living.

ALJ Kilgannon's opinion does not afford the Court an opportunity to conduct a meaningful review of the weight assigned to any of the medical opinions. Although ALJ Kilgannon's decision includes a lengthy recitation of Plaintiff's medical history, his analysis of the various medical opinions did not point to specific medical evidence to support this conclusion, and his citation to a few limited activities that Plaintiff said he could perform, without more, is not enough of a "good reason" to only grant limited weight to Dr. Carter's opinion. While in some cases, a reviewing court may be able to glean an ALJ's rationale from the record, this is not such a case. Cf. Petrie v. Astrue, 412 F. App'x 401, 406 (2d Cir. 2011) (summary order) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Additionally, it is unclear why ALJ Kilgannon granted only "some weight" to Dr. Graber's opinion because "she examined the claimant only once," but granted great weight to Dr. Galst's

---

[5] The opinion of N.P. Stamatos is not subject to controlling weight under the treating physician rule. As a nurse practitioner, she is not an "acceptable medical source" under the regulations and thus her opinion is not treated as a "medical opinion." See 20 C.F.R. §§ 404.1513, 404.1527, 416.913, 416.927; SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Her opinion should still be considered on remand in assessing the severity of Plaintiff's impairments and how it affects his ability to do work. See 20 C.F.R. §§ 404.1514, 416.913.

opinion when he did not examine the Plaintiff at all.[6] (See Tr. 26.) Similarly, the Court has trouble reconciling ALJ Kilgannon's determination that one of Plaintiff's severe impairments is dermatomyositis with his decision to give great weight to Dr. Galst's opinion, when Dr. Galst called that diagnosis into doubt. (See Tr. 26, 650–52.) Without more analysis, the Court cannot determine that ALJ Kilgannon properly assessed the weight assigned to the various medical opinions in accordance with the Commissioner's regulations and case law.

ALJ Kilgannon's initial credibility determination similarly prevents meaningful judicial review. An ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96–7p (S.S.A. July 2, 1996), 1996 WL 374186.[7] ALJ Kilgannon used the boilerplate language that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; [but his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in this decision*." (Tr. 18 (emphasis added).) However, ALJ Kilgannon then failed to explain how Plaintiff's statements were incredible—he merely recited Plaintiff's medical history and pointed to a few limited activities Plaintiff indicated he could perform in support of the RFC determination. That falls short of a proper credibility analysis in accordance with the Commissioner's regulations and case law.

---

[6] The Court, however, does not accept Plaintiff's argument that the medical opinion of a non-examining source is per se insufficient to supplant opinions from a treating physician. (Pl.'s Mem. 15). The SSA regulations "permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record." Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993). The Court cannot determine if it was proper here, as ALJ Kilgannon failed to explain how Dr. Galst's opinion was more consistent with the record than the opinions of the other physicians.

[7] Plaintiff cites to SSR 16-3p in his papers, which superseded SSR 96-7p. However, SSR 16-3p became effective on March 28, 2016, so SSR 96-7p is the Social Security Ruling applicable to Plaintiff's claim.

However, the Court will not grant Plaintiff's request to remand for calculation of benefits because the record does not lead to the definitive conclusion that Plaintiff is disabled. See Williams v. Apfel, 204 F.3d 48, 50 (2d Cir. 2000) (directing remand for further proceedings where the record was not entirely persuasive with respect to the Plaintiff's disability). Indeed, this case is particularly complex because there is evidence in the record that Plaintiff's functional abilities could improve with proper treatment for his recently diagnosed dermatomyositis. (See Tr. 404.) Given the delayed diagnosis, there is little evidence in the record about Plaintiff's response to any treatment. Similarly, Plaintiff underwent knee surgery in May and June 2016, but there is no record of whether this has affected his functional abilities. (See Tr. 756–57, 760–61.) Accordingly, on remand, it may be appropriate to conduct a further evaluation of Plaintiff's functional abilities. See Tarsia v. Astrue, 418 F. App'x 16, 19 (2d Cir. 2011) (summary order) ("The Commissioner remains free to direct such further medical examination and analysis as may be appropriate.").[8]

Accordingly, on remand, the Commissioner is directed to properly apply the treating physician rule and more thoroughly explain the weight assigned to each of the medical opinions.[9] The Commissioner should also reassess Plaintiff's subjective complaints. If the ultimate determination is that his complaints are not credible, an ALJ must use more than just the boilerplate language to explain how they are incredible.[10] Based on this revised analysis, and any additional evidence considered on remand, the Commissioner should reassess Plaintiff's RCF in light of the

---

[8] Should the Commissioner ultimately determine that Plaintiff is disabled, this suggests that he may be subject to a "Continuing Disability Review" between six and eighteen months after such a determination. 20 C.F.R. §§ 404.1590(d); 416.990(d).

[9] The Court encourages the Commissioner to expressly address all the factors for evaluating opinion evidence in the SSA regulations. 20 C.F.R. §§ 404.1527; 416.927.

[10] Again, the Commissioner is encouraged to expressly address all the factors for evaluating credibility identified in the SSA regulations. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

11

record as a whole.

Finally, the Court will briefly address Plaintiff's letter motion from November 2018 arguing that his case should be remanded because it was decided by an ALJ who was not constitutionally appointed at the time of the decision. (ECF No. 19.) Plaintiff based his argument upon the ruling of a recent Supreme Court case, Lucia v. SEC, 138 S. Ct. 2044 (2018). In Lucia, the Supreme Court ruled in favor of a plaintiff who argued that the ALJ who heard his case at the SEC was appointed by a method which did not conform to the Appointments Clause of the United States Constitution. The Lucia court found that, because the plaintiff had raised a "timely challenge" on this basis in his agency appeal, he was entitled to relief in the form of a hearing before a different ALJ who had been appropriately appointed. Id. at 2055. Though Plaintiff did not raise this challenge before the agency, he claims his objection was not waived, citing Sims v. Apfel, 530 U.S. 103, 110–111 (2000). The Commissioner disagrees, claiming that by failing to raise an Appointments Clause challenge before the agency, or in Plaintiff's opening brief to this Court, it has been waived. (ECF No. 21.) Ultimately, the Court need not decide this issue as the case is being remanded for further proceedings on other grounds.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's motion for judgment on the pleadings; DENIES the Commissioner's cross-motion; and REMANDS the case for further proceedings consistent with this opinion. The Clerk of the Court is directed to enter judgment accordingly.

**SO ORDERED.**
Dated: March 19, 2019
Central Islip, New York

                  _____/s/ (JMA)_____
                  JOAN M. AZRACK
                  UNITED STATES DISTRICT JUDGE